SANDERS, Justice.
 

 The defendants in this proceeding were inmates of the Louisiana State Penitentiary. They were convicted of a criminal conspiracy to introduce a quantity of contraband nasal inhalators upon the grounds of the Penitentiary in violation of LSA-R.S. 14:402. A sentence of one and one-half years in the Penitentiary was imposed upon each defendant. From the conviction and sentence, they have appealed, relying upon two bills of exception reserved to rulings of the district judge during the course of the trial.
 

 Bill of Exception No. 1 was reserved to the overruling of the defendants’' plea of autrefois convict, or former jeopardy. It is the contention of the defendants that they were previously convicted of the same offense charged in the indictment by the Louisiana State Penitentiary Disciplinary Board and sentenced to isolation for an indefinite period and a loss of six months’ good time. Interposing the proceedings of the Disciplinary Board, the defendants plead that the present indictment places them twice in jeopardy of their liberty for the same offense in violation of Article I, Section 9 of the Constitution of Louisiana, LSA, and the 14th Amendment of the Constitution of the United States.
 

 
 *97
 
 The defendants assert that the Disciplinary Board is a
 
 court
 
 organized by The Louisiana Board of Institutions and supervised by the Warden of the Louisiana State Penitentiary under LSA-R.S. 15 :853 which assigns to him responsibility for the discipline of the inmates. They argue that since the Board of Institutions is a state constitutional agency, the Disciplinary Board, which it created, is operated by constitutional authority.
 

 Article 279 of the Louisiana Code of Criminal Procedure, LSA-R.S. 15:279, which forms the basis for this plea, provides :
 

 “To constitute former jeopardy it is necessary, that the court in which the former trial took place had jurisdiction, and was legally constituted; that the former acquittal or conviction was rendered on a sufficient indictment; that the proceedings ending in the former acquittal or conviction were valid; that the former verdict rendered was responsive to some charge contained in the indictment and was of such form as to be the basis of a valid judgment; and that the offense formerly charged and that presently charged are either identical, or different grades of the same offense, or that the one is necessarily included in the other.”
 

 Contextually in the codal article, the term,
 
 court,
 
 must be defined as a judicial tribunal established for the publ-c admin-istration of criminal justice. It refers to a court embraced within Article VII, Section 35 of the Louisiana Constitution which provides :
 

 “The District Courts * * * shall have unlimited and exclusive original jurisdiction in all criminal cases, except such as may be vested in other courts authorized by this Constitution * *
 
 ‡»
 

 The Disciplinary Board is a body authorized to enforce discipline among the inmates of the Louisiana State Penitentiary by the imposition of punitive sanctions. It is not vested with jurisdiction in criminal cases under the cited constitutional provision. Hence, it is not a
 
 court
 
 within the intendment of the codal provision, and the proceedings of the Board do not constitute former jeopardy. We conclude that the plea of former jeopardy is without merit and that the trial court properly rejected the evidence pertaining to it.
 

 Bill of Exception No. 2 interposes the defense of entrapment. This bill was taken to the admission of evidence, over the objection of defense counsel, relating to an arranged plan, or scheme, to smuggle nasal inlialators into the Penitentiary.
 

 The evidence is to the effect that the defendant, Seymore Wheeler, solicited the assistance of a Correctional Officer, an institutional employee, in the smuggling of the nasal inlialators into the Penitentiary.
 
 *99
 
 The Officer reported this to his superiors, who instructed him to cooperate in the scheme in order to secure evidence of the smuggling operation. Through the Officer, the defendant, Jim Turner, dispatched a letter to his wife, accompanied by detailed instructions, requesting her to deliver the inhalators. Mrs. Turner was apprehended at the Penitentiary with the nasal inhalators. The letter was found in her purse.
 

 The law regarding “Entrapment” is stated with clarity in 22 C.J.S. Verbo, Criminal Law § 45, p. 99 :
 

 “One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of ‘entrapment.’ Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent. * * * Such entrapment is shown where it appears that officers of the law or their agents incited, induced, instigated, or lured accused into committing an offense which he otherwise would not have committed and had no intention of committing. In other words, if the criminal intent or design to commit the offense charged originates in the mind of the person who seeks to entrap accused and to lure him into commission of the crime merely for the purpose of arresting and prosecuting him no conviction may be made. * * * ”
 

 The rationale of this legal concept is that officers of the law shall not incite crime merely to punish the criminal. In keeping with this philosophy, which sustains it, the defense of entrapment has a limited application. It is restricted to those instances in which a defendant is induced or incited to commit a crime not originally intended or contemplated by him, for the purpose of arresting and prosecuting him. The fact that an opportunity is furnished or that the defendant is aided in the commission of a crime which originated in his own mind constitutes no defense. There is a clear distinction between inducing a person to commit a crime and setting a trap to catch him in the execution of criminal designs of his own conception. In the judicial formulation of this doctrine, the primary emphasis is on the defendant’s predisposition to commit the crime. These limitations, implicit in the doctrine itself, have been universally recognized. 15 Am. Jur.Verbo, Criminal Law, § 335, p. 24; Wharton’s Criminal Law and Procedure, (Anderson), Volume 1, § 132, p. 281; see also the general annotation of cases in 18 A.L.R. 146; 66 A.L.R. 478; 86 A.L.R. 263.
 

 
 *101
 
 In 15 Am.Jur., Criminal Law, supra, the defense of entrapment is delineated as follows :
 

 “It may therefore be stated as a general rule that where the doing of a particular act is a crime regardless of the consent of anyone, the courts are agreed that if the criminal intent originates in the mind of the accused and the criminal offense is completed, the fact that an opportunity is furnished or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor constitutes no defense.”
 

 Similarly, Wharton’s Criminal Law and Procedure, supra, states:
 

 “When the doing of a particular act is a crime regardless of the consent of anyone, and the criminal intent originates in the mind of the accused, the fact that an opportunity is furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense.”
 

 The Louisiana jurisprudence is in accord. State v. Dudoussat, 47 La.Ann. 977, 17 So. 685; State v. Abraham, 158 La. 1021, 105 So. 50; State v. Rainey, 184 La. 547, 166 So. 670; State v. Emerson, 233 La. 885, 98 So.2d 225.
 

 This Court said in State v. Rainey, supra, [184 La. 547, 166 So. 671] quoting from State v. Dudoussat:
 

 “ ‘It is legitimate and proper to adopt devices or traps to detect crime, provided the device is not a temptation and solicitation to commit it.’ ”
 

 In State v. Abraham, supra, [158 La. 1021, 105 So. 51] the defendant was convicted of the unlawful sale of intoxicating liquor based on evidence which he contended was inadmissible because it was secured by entrapment. In the opinion, it is stated:
 

 “The holdings are that it is not a defense to a prosecution for an illegal sale of intoxicating liquors to show that the purchase was made by a detective or a hired informer. There is a clear distinction between inducing a person to do an unlawful act for the purpose of prosecuting him, and catching him in the execution of a criminal design of his own conception.”
 

 In the case before us, the crime was conceived in the minds of the defendants: it was there that the criminal intent was born. The defendants were not incited or induced to commit the offense by the Correctional Officer or any other official. Now that the contours of the offense have been exposed, the defendants cannot be heard to say that because they were unwary in the execution of their criminal designs»
 
 *103
 
 they should be shielded from the punitive force of the law.
 

 As was aptly stated by the district judge:
 

 “No one in authority * * * solicited the defendants
 
 to
 
 commit any crime. The evidence was abundant that it was the defendants who did the solicitation.”
 

 Thus, the application of the legal principle to the evidence results in the judicial ■conclusion that the defense of entrapment is not well founded. The court
 
 a quo
 
 properly admitted the evidence of the crime charged.
 

 For the reasons assigned, the convictions and sentences are affirmed.