471 So.2d 900 (1985)
STATE of Louisiana, Appellee,
v.
Zadie Lee ROBERTS, Appellant.
No. 17021-KA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*901 Diehlmann C. Bernhardt, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James Allan Norris, Jr., Dist. Atty., Robert S. Kennedy, Asst. Atty. Gen., Monroe, for appellee.
Before HALL, C.J., and JASPER E. JONES and NORRIS, JJ.
HALL, Chief Judge.
The defendant, Zadie Lee Roberts, was charged by bill of information with the offense of sale of a minor child in violation of LSA-R.S. 14:286. A Ouachita Parish jury found the defendant guilty of the lesser included offense of attempt to sell a minor child, LSA-R.S. 14:27, 14:286. The trial court sentenced the defendant to serve three months in the Ouachita Parish Jail with credit for time already served.
The defendant appealed, assigning as error the trial court's denial of defendant's motion to suppress statements and the court's denial of a motion for a post verdict judgment of acquittal. Both motions were grounded on the contention that the actions of law enforcement officers in this case amounted to entrapment. It is contended that because of the entrapment, all pre-arrest and post-arrest statements of the defendant to the officers should have been suppressed, and the evidence does not permit a finding of guilt.
Finding no error, we affirm the conviction.

FACTS
On June 29, 1983 the defendant gave birth to a son, Jason Lee Roberts, at E.A. Conway hospital in Monroe. Jason is the defendant's second child born out of wedlock. The defendant gave her first child up for adoption.
The defendant and the child resided at the home of the defendant's mother, Helen Thompson, until Friday, August 5, 1983 when, due to a dispute with the defendant's sister, the defendant moved into the home of Alice Faye Cannon with the baby which was then approximately 6 weeks of age. Mrs. Cannon is a beauty operator and was a friend of the defendant's mother. The defendant was to stay at Mrs. Cannon's home for a day or two until she could "get her things worked out." During the stay, Mrs. Cannon and the defendant discussed the possibility of the defendant giving Jason up for adoption. On the following Sunday, the defendant moved back into her mother's home with the child. On the following Tuesday, the defendant informed Mrs. Cannon that she would be interested in giving her child up for adoption. At that point, Mrs. Cannon contacted her cousins in Mississippi, Billy and Elaine Stringer, and initiated plans for the adoption of Jason.
After the defendant told Mrs. Cannon that she would allow the Stringers to adopt the child, the defendant was contacted by her sister, Carol Varnell, who lived in Dallas, Texas. Carol informed the defendant that a Texas couple would pay $3,000.00 for the baby. On Wednesday morning, August 10, 1983, the defendant informed Mrs. Cannon that she had been offered $3,000.00 for the baby and that she intended to travel to Texas the next day to give her child up for adoption to the Texas couple in return for the $3,000.00.
At approximately 5:00 p.m. that day, Mrs. Cannon phoned Sergeant Jay Via of the Ouachita Parish Sheriff's Department and asked Sergeant Via if it was in fact illegal to sell a child in Dallas, Texas or in Louisiana, and informed him of the defendant's intentions. Sergeant Via testified that he then checked with the district attorney's office in Ouachita Parish as well as the police department in Dallas, Texas and determined that it was illegal according to *902 the information which he received. Pursuant to the information received by Sergeant Via from Mrs. Cannon, Sergeant Via assigned Deputy Richard Medaries to contact the defendant and pose as a potential adoptive parent.
On that evening, Deputy Medaries made three telephone calls to the defendant. These telephone calls were recorded, transcribed, and admitted into evidence. During these conversations, Deputy Medaries told the defendant that his name was Richard Allen and that he and his wife had been trying to adopt a baby for quite some time. The defendant told Deputy Medaries that her sister knew a couple in Texas that were going to give her $3,000.00. Deputy Medaries told the defendant that he would be willing to give her $4,000.00. After the third call, the defendant agreed to meet Deputy Medaries at the parking lot of L.B. Thompson's Grocery Store located on Highway 34 in the western part of Ouachita Parish.
Deputy Medaries obtained the assistance of Patricia Heard, Administrative Assistant in the Ouachita Parish District Attorney's Office, to go with him to meet the defendant at the grocery store and pose as Deputy Medaries' wife. At approximately 9:30 p.m., Deputy Medaries arrived at the grocery store with $4,000.00 in cash and a hidden microphone to record the conversation. Upon arriving at the store, Medaries observed the vehicle described to him parked away from the store facing the roadway. After pulling up to the vehicle, Medaries observed two females in the vehicle, the defendant's mother seated on the driver's side of the vehicle, and the defendant and the child sitting on the passenger's side. As Medaries approached the vehicle, Mrs. Thompson, defendant's mother, told Medaries that she was not going to have anything else to do with the transaction and entered the grocery store. Mrs. Heard then sat on the driver's side of the vehicle in the front seat and asked the defendant if she could hold the baby. Medaries knelt outside the vehicle by the doorway on the driver's side. The defendant told Deputy Medaries and Mrs. Heard the child's name and age, the child's habits, and the child's allergies. Deputy Medaries asked the defendant how much she wanted and the defendant told him $3,000.00. Deputy Medaries counted out $3,000.00 and placed the money in between Mrs. Heard and the defendant on the front seat of the vehicle. The doors of the car were open and a breeze was blowing so the deputy told the defendant to "pick up the money before the wind blows it away." Immediately after the defendant picked up the money, the defendant was placed under arrest for selling her child, Jason. The conversation between Deputy Medaries, Mrs. Heard, and the defendant was recorded, transcribed, and admitted into evidence.
After the defendant's arrest, the defendant was taken to the Ouachita Parish Sheriff's Department where she answered questions from sheriff's deputies concerning her efforts to receive compensation for the adoption of her child. The transcript of the interview reflects that the defendant was fully advised of her constitutional rights and waived those rights.

MOTION TO SUPPRESS
In a motion to suppress, the defendant sought to exclude from evidence all conversations between the defendants and the deputies prior to her arrest and statements made after her arrest. The sole ground urged for suppression is that the conduct of the officers amounted to entrapment and was illegal; therefore, the statements made as the result of that conduct should be suppressed.
Under LSA-C.Cr.P. Art. 703A and B, a defendant may move to suppress any evidence from use at the trial on the merits on the grounds that it was unconstitutionally obtained and may move on any constitutional grounds to suppress a confession or statement of any nature made by the defendant.
The Louisiana Supreme Court has squarely held that since the plea of entrapment does not raise a constitutional issue, but rather is a defense on the merits, a motion to suppress may not be utilized to *903 raise such a defense in advance of the trial itself. State v. Bates, 301 So.2d 619 (La. 1974); State v. Dudek, 263 La. 258, 268 So.2d 217 (1972). See also State v. Brown, 352 So.2d 690 (La.1977).
The trial court correctly denied the motion to suppress. Defendant's first assignment of error is without merit.

MOTION FOR POST VERDICT JUDGMENT OF ACQUITTAL
In the second assignment of error, the defendant contends that the trial court erred in denying her motion for post verdict judgment of acquittal which was grounded on the contention that the offense was committed as the result of entrapment by law enforcement officers.
The law concerning the affirmative defense of entrapment was set forth by this court in State v. Cook, 460 So.2d 1075 (La.App.2d Cir.1984), as follows:
An entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official for the purpose of obtaining evidence of the commission of an offense solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so. State v. Batiste, 363 So.2d 639 (La.1978). When entrapment is at issue, the focal point of the inquiry is on the predisposition of the defendant to commit the crime at issue as well as on the conduct of the police. State v. Batiste, supra. For entrapment to exist, a defendant must be induced in some way to engage in criminal conduct which he otherwise would not be disposed to engage in. An entrapment will not lie if the officers or agents have merely furnished a defendant who is predisposed to commit the crime the opportunities to do so. State v. Moody, 393 So.2d 1212 (La.1981).
The defendant contends that she lacked the necessary predisposition to commit a crime in the state of Louisiana. Specifically, the defendant contends that she intended to travel to Texas to engage in an adoption before an attorney for which she was to receive the sum of $3,000.00, all of which would be accomplished in a manner legal and noncriminal under the laws of the jurisdiction where it was to occur. The defendant's contention lacks both a factual basis in the record and under law.
Specifically, no evidence was offered to indicate that either the defendant believed the transaction to be legal in Texas or that such a transaction would, in fact, be legal in the state of Texas. Further, Texas Penal Code Ann. § 25.06 (Vernon 1974) provides as follows:
Sale or Purchase of Child
(a) A person commits an offense if he:
(1) possesses a child or has the custody, conservatorship, or guardianship of a child, whether or not he has actual possession of the child, and he offers to accept, agrees to accept, or accepts a thing of value for the delivery of the child to another or for the possession of the child by another for purposes of adoption; or
(2) offers to give, agrees to give, or gives a thing of value to another for acquiring or maintaining the possession of a child for the purpose of adoption.
(b) It is an exception to the application of this section that the thing of value is:
(1) a fee is paid to a child-placing agency as authorized by the law;
(2) a fee paid to an attorney or physician for services rendered in the usual course of legal or medical practice; or
(3) a reimbursement of legal or medical expenses incurred by a person for the benefit of the child.
(c) An offense under this section is a felony of the third degree unless the actor has been convicted previously under this section, in which event the offense is a felony of the second degree.
In the present case, there is no evidence to indicate that the payment of $3,000.00 was to reimburse the defendant for legal or medical expenses incurred by the defendant for the benefit of the child. The evidence reflects that the defendant had no medical expenses due to the fact that the *904 defendant delivered the child at a charity hospital in Monroe. Additionally, transcripts of the defendant's telephone conversations indicate that the defendant intended to use the money to buy a car and move out of her mother's home. Therefore, the defendant's contention that she was seeking to engage in conduct legal in the state of Texas, although illegal in the state of Louisiana, has no basis. The evidence reflects that the defendant was actively seeking to give her baby up for adoption in return for monetary compensation. The actions of the law enforcement officials in the present case merely furnished the defendant who was predisposed to commit the crime the opportunity to do so.
This assignment of error is without merit.
DECREE
Having found no merit to defendant's assignments of error, the defendant's conviction is affirmed.
AFFIRMED.