780 So.2d 1123 (2001)
STATE of Louisiana
v.
Marcus W. IRON.
No. CR00-1238.
Court of Appeal of Louisiana, Third Circuit.
February 14, 2001.
Rehearing Denied April 11, 2001.
*1124 Douglas L. Hebert, Jr., District Attorney, Oberlin, LA, Counsel for Appellee, State of Louisiana.
Paula C. Marx, Louisiana Appellate Project, Lafayette, LA, Counsel for Defendant/Appellant, Marcus W. Iron.
Court composed of Judge THIBODEAUX, Judge PETERS and Judge PICKETT.
THIBODEAUX, Judge.
A jury convicted Defendant, Marcus Iron, of distribution of cocaine. The trial court sentenced him to serve twenty years at hard labor and suspended five years.
He appeals his conviction and sentence. We have reviewed his assignments of error which allege insufficiency of the evidence, ineffective assistance of counsel, entrapment issues, and excessiveness of sentence. We find them to be without merit and affirm his conviction and sentence.

FACTS
On July 13, 1998, the Defendant allegedly sold a rock of crack cocaine for $40 to Tina Hampton, a confidential informant who was working undercover on behalf of the Allen Parish Sheriff's Office. The substance purchased by Ms. Hampton tested positive for cocaine.

ASSIGNMENT OF ERROR NO. 1:

Sufficiency of the Evidence
The Defendant contends that the verdict fails to meet the legal standard for sufficiency of the evidence in that the State failed to prove beyond a reasonable doubt that the substance sold to the confidential informant was cocaine. Specifically, the Defendant maintains that the issue is one of chain of custody because the lab report states that the evidence examined was contained in a glass vial whereas the testimony indicates that the evidence was stored and given to the lab in a film canister. The Defendant concludes that the contents of the film canister were not tested. Thus, the element of proof as to what he sold to Ms. Hampton is lacking.
Louisiana Revised Statutes 40:967(A)(1) prohibits any person from knowingly or intentionally distributing cocaine. The Defendant has limited his request for a sufficiency review of the evidence to the element involving the presence of cocaine. Thus, the sole issue for review under this assignment of error is whether the substance sold by the Defendant to Ms. Hampton was, in fact, cocaine.
The Defendant's argument centers around the chain of custody of the alleged cocaine. As noted by the Louisiana Supreme Court in State v. Paster, 373 So.2d 170, 177 (La.1979):
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, *1125 that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence.
This court has consistently held that
[a] continuous chain of custody is not essential, provided the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object which was originally seized by the officers. State v. Sharp, 414 So.2d 752 (La.1982). Lack of positive identification goes to the weight of the evidence rather than its admissibility. Ultimately, connexity is a factual matter for determination by the jury. State v. Sharp, supra.

State v. Butler, 615 So.2d 496, 504 (La. App. 3 Cir.1993), writ denied, 94-0634 (La.6/28/96); 675 So.2d 1107. See also State v. Brooks, 505 So.2d 245 (La.App. 3 Cir.1987).
On July 13, 1998, Ms. Hampton participated in an undercover operation involving the Defendant. According to Deputy Ben Perkins and Ms. Hampton, Deputy Perkins searched Ms. Hampton and the vehicle she was driving before departing, turned on the monitoring equipment and gave her film canisters labeled "A," "B," "C" and "D"; she placed these in the glove box of the vehicle. Deputy Perkins testified that he instructed Ms. Hampton to put the first purchase in canister "A," the second purchase in canister "B," and so on. He also stated that film canisters were used in this operation because he did not have any glass vials that day. Deputy Perkins explained that he found several empty film containers in his truck and chose to use them as opposed to wrapping the drugs in paper.
Ms. Hampton testified that she proceeded to the Oakdale area where she purchased a rock of cocaine from the Defendant. She explained that after the purchase, she drove to another area where she would not be seen and placed the rock in the canister marked "A," returned the canister to the glove box and locked the box. Ms. Hampton added that she did not remove the rock from the glove box between the time she placed the rock in the glove box and the time she met up with Deputy Perkins. She also denied that the glove box had been tampered with while she was driving around, nor did she pick anyone up during that time. Ms. Hampton testified that she met Deputy Perkins at a designated place where he retrieved the rock from her.
Ms. Hampton denied that the substances in the canisters from the various purchases that evening were commingled. She also testified that the purchase from the Defendant had been removed from the glove box prior to the subsequent buys that evening when she changed areas. According to Ms. Hampton, the canister containing the rock purchased from the Defendant never came into contact with the canisters containing other purchases that evening. Ms. Hampton admitted that she could not identify the actual rock of cocaine she purchased from the Defendant or the other rocks purchased from other individuals that evening by looking at the rock. However, she could identify them from the markings on the canisters.
Deputy Perkins testified that Ms. Hampton returned to the designated area where he received the film canister marked "A." Deputy Perkins stated that he looked inside the container and saw two off-white rocks, then placed the evidence in his evidence bag and secured it in his truck. He testified that no one else possessed a key to the truck. After the purchase from the Defendant in Oakdale, they proceeded to Oberlin where subsequent purchases were made. Upon his return from Oberlin, Deputy Perkins testified that he removed the evidence bag from his truck containing the purchase from the Defendant and placed it into the evidence locker in his office. He stated that he possesses the only key to the locker. Next, Deputy Perkins testified that he removed *1126 the evidence bag from the locker the following day and turned it over to the evidence officer, Peggy Ray, at 11:00 a.m. He added that the evidence bag was in the same condition when he removed it from the locker as it was when he placed it in the locker.
Deputy Peggy Ray testified that she received the evidence regarding the Defendant from Deputy Perkins on July 14, 1998, at 11:00 a.m. and recorded it on an evidence receipt. Next, she explained that she filled out a submittal form to the Southwest Louisiana Criminalistics Laboratory for an analysis of the evidence and locked up the evidence until she transported it to the crime lab. Deputy Ray stated that she hand-delivered the evidence to Dana Fleming at the crime lab on July 30, 1998, without ever looking inside the evidence bag. Ms. Fleming signed for the receipt of the evidence and gave it a lab number. Deputy Ray testified that she picked up the evidence on August 12, 1998, from Lillian Fontenot at the crime lab and returned it to the evidence room. According to Deputy Ray, the evidence was removed from the evidence room on March 6, 1999, when the office was moved to a new building; she personally moved the evidence from the old building to the new building. She stated that the evidence was not removed from the evidence room again until the day of trial. Lastly, Deputy Ray testified that once evidence is locked in the evidence room, no one can gain entry to the room other than herself; she possesses the only key to the room.
The lab report regarding the analysis of the substance allegedly sold by the Defendant was admitted into evidence at trial and reflected that a sealed evidence bag containing a glass vial marked "A" containing one off-white rock had been submitted for testing. Deputy Ray was questioned about the discrepancy in the report, that is, why the report indicated that the substance tested came from a glass vial as opposed to a film canister. Deputy Ray testified that it was possible that when she filled out the submittal form, she indicated a glass vial instead of a film canister. Deputy Ray identified the submittal form she had completed before delivering the evidence to the crime lab, and the form was admitted into evidence. On the submittal form with regard to the evidence submitted, the document reads "[e]vidence bag containing glass vial marked `A' stated to contain one off white rock." Deputy Ray confirmed that the evidence bag containing a film canister marked "A" and submitted into evidence was the package that she delivered and picked up from the crime lab. She also identified the evidence number on the evidence bag which matched the evidence number she indicated on her submittal form. Also, Deputy Ray identified the number on the lab report assigned to the evidence by the crime lab upon receipt of same which matched the number reflected on the evidence bag. Lastly, Deputy Ray testified that it was typical to store small quantities of drugs in film canisters and glass containers.
Considering the above review of the facts and testimony elicited at trial, the record supports the notion that the rock of cocaine purchased from the Defendant, more probably than not, is the same rock that was tested at the crime lab. Although a discrepancy exists regarding the identification of the container in which it was submitted, the alleged lack of positive identification goes to the weight of the evidence rather than its admissibility. The testimony of Deputy Ray regarding the discrepancy provides a plausible explanation for same. Absent the discrepancy, the record clearly supports that the chain of custody was not broken. Accordingly, the jury's factual determination that the substance sold by the Defendant was cocaine will not be disturbed. Thus, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:

Entrapment
The Defendant argues that his verdict should be vacated because he was entrapped. In support of his argument, the Defendant maintains that he was not involved *1127 in any type of illegal activity prior to being approached by Ms. Hampton, that he did not flag her down or attempt to sell her anything and that he initially did not want to sell to Ms. Hampton.
As stated by this court in State v. Caldwell, 616 So.2d 713, 719 (La.App. 3 Cir.), writ granted in part, denied in part, 620 So.2d 859 (La.1993):
Entrapment is a defense which arises when a law enforcement official or an undercover agent, acting in cooperation with such an official for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. State v. Brand, 520 So.2d 114, 117 (La.1988); and State v. Bernard, 441 So.2d 817, 820 (La.App. 3 Cir.1983), writ denied, 445 So.2d 439 (La.1984). Rather than negating an essential element of the crime, the entrapment defense establishes exculpatory circumstances that defeat culpability in spite of the fact that the prosecution has proved all of the essential elements of the crime beyond a reasonable doubt. State v. Brand, 520 So.2d 114 (La.1988). As the court noted in Brand, the burden is on the defendant to prove entrapment by a preponderance of the evidence. Id. at 117.
In State v. Brand, 520 So.2d 114, 117 (La.1988), the court questioned whether the proved criminal conduct was caused by the inducement "of an innocent person into committing the crime or by defendant's readiness and willingness to do so without persuasion. State v. Batiste, supra [363 So.2d 639 (La.1978) ]."
In Jacobson v. United States, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), the United States Supreme Court held that "[w]here the Government has induced an individual to break the law and the defense of entrapment is at issue ..., the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." Id. at 548-49, 112 S.Ct. at 1540. Also, "[a]n entrapment defense will not lie if the officers or agents merely furnished a defendant who is predisposed to commit the crime the opportunity to do so." State v. Moody, 393 So.2d 1212 (La.1981); State v. Prudhomme, 532 So.2d 234, 240 (La. App. 3 Cir.1988), writ denied, 541 So.2d 871 (La.1989).
In this case, Deputy Perkins testified that he did not instruct Ms. Hampton to buy from a specific person. Ms. Hampton testified that she was "turning blocks" and riding around when she encountered the Defendant. She stated that she knew the Defendant prior to that day and had known him for a long time. She explained that as she was traveling down Garner Street, the Defendant was riding a bicycle down Lock Street. They met up at the corner of Garner and Lock Streets. According to Ms. Hampton, the Defendant saw her and turned on to Garner Street and she drove up to him. Ms. Hampton stated that the Defendant stopped his bike and she asked him if he had a "thirty"; the Defendant replied in the affirmative. She explained that they conversed a moment, at which time he asked her to go to his apartment to buy drugs. Next, the Defendant proceeded to untie a plastic bag containing crack cocaine, broke off a rock and sold it to Ms. Hampton for $40.
The transaction between the Defendant and Ms. Hampton was recorded on videotape, submitted into evidence and played for the jury. The video tape of the transaction supported Ms. Hampton's version of the transaction. After the Defendant confirmed that he had a "thirty," he asked her if she wanted to go to his house. She expressed some concern, explaining that she did not want to be "rushed." The Defendant replied, "Let me go on and do it for you," and promptly began opening the plastic in which the rock of cocaine was stored. As he was unwrapping the cocaine, the Defendant proceeded to give Ms. Hampton specific instructions to his apartment and encouraged her to come to his *1128 back door at anytime. After the exchange took place, the Defendant continued to explain the directions to his apartment and encouraged her to return for more drugs. On cross-examination, she testified that the Defendant did not want to sell to her when she first approached because he was out in the open; that was why he had invited her to his apartment.
The record supports the contention that the Defendant was not induced to sell crack cocaine. Although Ms. Hampton initiated contact with the Defendant, the record and videotapes of the transaction do not portray acts of persuasion on the part of Ms. Hampton to get Defendant to sell crack cocaine to her. On the contrary, the record reflects the Defendant's readiness and willingness to sell crack cocaine to Ms. Hampton. He expressed his preference to sell from his home to avoid publicity and encouraged her to return to him for future purchases.
To demonstrate the Defendant's predisposition to sell cocaine, Charles Guillory, the Defendant's probation officer, testified that he was currently supervising the Defendant in connection with a guilty plea to possession of cocaine in East Baton Rouge Parish. Mr. Guillory stated that the bill of information charged the Defendant with possession of cocaine.[1]
The trier of fact could have found that the defense of entrapment was not established. The evidence supports the notion that the Defendant was predisposed to sell drugs as evinced by his willingness to provide drugs to Ms. Hampton and because he had an available supply on his person. Also, the testimony of Ms. Hampton and the video tapes of the transaction indicate that the Defendant was not badgered or coerced by Ms. Hampton to commit a crime which he would not otherwise commit. Ms. Hampton merely provided the Defendant with an opportunity to commit a crime which he was ready, willing and able to commit. For these reasons, the jury's conclusion that the Defendant was predisposed to commit the crime and was not entrapped will not be disturbed.

ASSIGNMENTS OF ERROR NOS. 3 & 4:

Excessiveness of Sentence
The Defendant argues that the sentence imposed was excessive and that the trial court failed to comply with the sentencing mandates of La.Code Crim.P. art. 894.1. Following imposition of sentence, the court denied Defendant's oral motion to reconsider the sentence. The Defendant did not urge any reasons for the reconsideration of his sentence at the time of his oral motion. Also, a written motion was not filed.
With respect to the issue of compliance with La.Code Crim.P. art. 894.1, this court stated in State v. Anderson, 95-1688, p. 4 (La .App. 3 Cir. 5/8/96); 677 So.2d 480, 483:
The Legislature has provided criteria to aid a sentencing court in determining whether a sentence of imprisonment should be imposed and whether suspension of a sentence or probation is warranted. La.Code Crim.P. art. 894.1; State v. Klause, 525 So.2d 1076 (La.App. 3 Cir.1988). Paragraph C of Article 894.1 requires the court to state for the record the considerations taken into account and the factual basis used when imposing a sentence. The sentencing court need not articulate every circumstance or read through a checklist of items to comply with the requirements of La.Code Crim.P. art. 894.1. State v. Pontiff, 604 So.2d 71 (La.App. 3 Cir. 1992). However, the record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the defendant's sentence. State v. Smith, 433 So.2d 688 (La.1983).
If there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every *1129 circumstance listed in Article 894.1 will not necessitate a remand for resentencing. State v. Cottingin, 476 So.2d 1184 (La.App. 3 Cir.1985), appeal after remand, 496 So.2d 1379 (La.App. 3 Cir. 1986); State v. Morgan, 428 So.2d 1215 (La.App. 3 Cir.1983), writ denied, 433 So.2d 166 (La.1983); See also, Smith, 433 So.2d 688 and State v. Stein, 611 So.2d 800 (La.App. 3 Cir.1992). Even though art. 894.1 has undergone several major revisions, the reasoning used in these cases is still applicable.
The penalty for distribution of cocaine as set forth in La.R.S. 40:967(B)(4)(b) is five to thirty years at hard labor, the first five to be served without benefit of parole, probation or suspension of sentence. A fine of up to $50,000 may also be imposed. In this case, the Defendant received twenty years at hard labor, five years suspended, and the first five years to be served without benefit of parole, probation or suspension of sentence. No fine was imposed. Thus, the Defendant's midrange sentence falls within the statutory limits. Also, the State chose not to file a multiple offender bill against the Defendant, a decision from which the Defendant received significant benefit.
Following the Defendant's conviction, the trial court ordered a presentence investigation report to be completed prior to sentencing. With regard to the mitigating and aggravating circumstances considered at sentencing, the Defendant asked the trial judge to consider that he had a wife and five children, ages nine, seven, five, three and one. The trial judge acknowledged these facts. The trial judge also stated that he considered the Defendant's status as a second felony offender. The trial court, however, did not refer to the presentence investigation report at sentencing or the findings therein other than the Defendant's status as a second felony offender.[2] The presentence investigation report also contained the Defendant's social history which detailed his family status, education and employment history.
Although the trial court did not articulate every circumstance listed in Article 894.1, there is an adequate factual basis for the sentence contained in the record.

ASSIGNMENTS OF ERROR NOS. 5 & 6:

Jury Instruction on Entrapment & Ineffective Assistance of Counsel
The Defendant contends that the jury was not properly instructed on the issue of entrapment. Specifically, the Defendant maintains that the denial of the special instruction combined with the lack of an instruction on the burden of proof was in error. Also, the Defendant maintains that if this court finds the consideration of this error to be procedurally barred, then the failure of the Defendant's attorney to object constitutes ineffective assistance of counsel.
Regarding the entrapment defense, the court noted that Mr. Deshotels, counsel for the Defendant, had an objection to a jury charge. In response, Mr. Deshotels asked the trial court to instruct the jury that "a defendant may jointly deny commission of the offense and simultaneously claim entrapment." The trial court denied this request, stating that the charge was not applicable to this case. The court reasoned that "[e]ven though you're able to argue to the jury that they can either find entrapment or find that the State failed to carry its burden of proof, the Court does not find that there is any evidence that Mr. Iron has denied the commission *1130 of the offense." The trial court then inquired if Mr. Deshotels had any other objections to the charge to which he responded, "None." The trial court included a general instruction of entrapment in the jury charges as follows:
The defendant in this case has asserted the affirmative defense of entrapment. Entrapment applies when a law enforcement officer or someone acting in concert with such an officer, for the purpose of collecting evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to commit that offense when he is not otherwise disposed to do so. The officer must plan and conceive the crime and the defendant must have perpetrated it only because of the trickery, persuasion, or fraud of the officer. It is not enough that the officers or agents merely furnish an opportunity for the defendant to commit the crime when he is already predisposed to do so. There is a clear distinction between inducing someone to commit a crime and setting a trap for him to commit crimes of his own conception. The former only is entrapment. The focus is on the defendant's predisposition to commit the crime. Once it is shown that government agents instigated the commission of the offense, the ultimate question is whether the inducement by the officers or the defendant's own predisposition caused the criminal conduct in question.
Louisiana Code of Criminal Procedure Article 807 provides that the State and Defendant have the right to submit to the court special written charges for the jury before argument and the court may receive them, in its discretion, after argument has begun. Also, Article 807 reads:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
As noted by the Louisiana Supreme Court in State v. Craig, 95-2499, p. 7 (La.5/20/97); 699 So.2d 865, 869, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997), a requested special jury instruction "must be supported by the evidence." In Craig, the defendant argued that the trial court erred in failing to charge the jury that he was prevented by law from entering an unqualified plea of guilty to first degree murder. In affirming the trial court's denial of the charge, the supreme court reasoned that the defendant introduced no evidence that he attempted to plead guilty to first degree murder and, thus, his inability to plead guilty was not supported by the evidence and he was not entitled to the instruction.
Likewise, as stated by the court in the present case, the Defendant did not present any evidence during trial that he denied committing the offense. Thus, the Defendant was not entitled to the instruction. Furthermore, the trial court provided the jury a general instruction on the defense of entrapment. Accordingly, this assignment is without merit. Also, the Defendant preserved his right on appeal to challenge the trial court's decision regarding the charge by objecting to the jury charge at the time the trial court presented it. Thus, the Defendant was not procedurally barred to raise the issue on appeal, and consideration of assignment of error number six is moot.

CONCLUSION
For the foregoing reason, the Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The presentence investigation report indicates that the Defendant pled guilty to the lesser offense of possession of cocaine and was originally charged with possession of cocaine with intent to distribute.
[2] The presentence investigation report indicates that on May 11, 1998, the Defendant pled guilty to an amended bill from possession with the intent to distribute cocaine to possession of cocaine. The court deferred the imposition of his sentence and placed him on probation for two years with special conditions. During probation, the Defendant's attitude and behavior were not adequate and he violated several conditions of his probation as well as committing the instant offense. His probation was revoked, and he was sentenced on October 22, 1999, to serve five years at hard labor.