393 So.2d 1212 (1981)
STATE of Louisiana
v.
William M. MOODY.
No. 80-K-1784.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 2, 1981.[*]
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Richard Chaffin, Asst. Dist. Atty., for plaintiff-appellee.
Robert L. Kleinpeter, Kleinpeter, Kleinpeter & Kleinpeter, Baton Rouge, for defendant-appellant.
DENNIS, Justice.
The issue presented by this criminal appeal is whether the state must offer expert testimony in its case-in-chief in order to establish that the defendant, a licensed physician, prescribed a controlled dangerous substance for other than a legitimate medical purpose while acting in good faith in the usual course of his professional practice. We hold that expert testimony was unnecessary under the facts in this case and that the record contains ample evidence from which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, *1213 we affirm defendant's convictions and sentences.
The defendant was charged with eight counts of unlawful distribution of phentermine in violation of La.R.S. 40:967(A). After the close of the state's evidence in this bench trial, the defendant moved for a judgment of acquittal on all counts. La.C. Cr.P. art. 778. The trial judge granted his motion on counts one and two, but denied the motion as to the remaining counts. The defendant subsequently rested without presenting any evidence in his behalf. The trial judge found the defendant guilty on all six counts and sentenced him to a five year term of imprisonment at hard labor on each count to run concurrently. The judge suspended execution of the sentence and placed the defendant on active supervised probation with the special conditions that he provide 300 hours of service to a penal institution at no charge and pay a $1000 fine.

FACTS
The defendant's principal assignment challenges the sufficiency of the evidence, and thus, we will summarize the evidence in the record in some detail as related by the various drug enforcement agents who testified for the state.
The counts are based upon the defendant's prescribing phentermine, a controlled dangerous substance, La.R.S. 40:964 Schedule II(C)(6), to four undercover law enforcement agents posing as patients on separate occasions between September 6, 1977 and June 14, 1978. In each instance, an agent appeared at the doctor's office without an appointment and secured a prescription for phentermine with no physical examination or medical history being taken. The defendant charged twelve dollars cash for each prescription.

COUNTS 1 and 2
Counts one and two are based on Dr. Moody's prescribing phentermine to Tulley Vincent on September 6 and September 20, 1977. On Vincent's initial visit, the defendant's receptionist wrote the patient's name, address and place of employment on an index card. Vincent told the doctor that he was a student, worked at Exxon, partied frequently, and "needed something to keep up with the pace." The doctor did not conduct a physical examination or attempt in any way to construct a medical history of his patient. He instead wrote a prescription for thirty phentermine capsules and told Vincent that this should help. Vincent was in the examination room for less than two minutes. Before leaving he paid the receptionist the customary twelve dollar cash fee. Two weeks later, Vincent returned and asked the doctor for something stronger. The doctor then wrote another prescription for a different brand of phentermine capsules. With the exception that Vincent was weighed this time, the second visit was factually similar to the first. Neither of these counts are before us at this time since the trial judge, without written reasons, granted the motion for a judgment of acquittal on counts one and two. The trial judge apparently distinguished the remaining counts on the basis that the prescriptions in the latter counts were written upon the specific requests of the patients for particular controlled drugs.

COUNT 3
This count is based upon the defendant's prescribing phentermine capsules to Linda Bourgeois on May 2, 1978. Bourgeois had visited a week earlier at which time she told the defendant that she was an L.S.U. student and that she had been referred to the doctor by her employer, Carlos Carson. On May 2, she returned saying that she needed something stronger to keep her going during exams. She specifically requested some blue and clear capsules that she said had worked before. The doctor showed her some capsules fitting that description and wrote a prescription for a month's supply of phentermine capsules. Again the doctor conducted no physical examination in this perfunctory office visit and the usual flat cash fee was charged.

COUNTS 4-7
Each of these counts represent one office visit and one phentermine prescription issued by the defendant to agent James Benjamin.
*1214 Benjamin's first visit was on May 27, 1978 at which time he informed the doctor that he had been staying up late, working a lot, and needed something to keep him going. When the doctor said he would prescribe a milder stimulant, Benjamin objected, saying that "Crazy Carlos told me you would write a prescription for Fastin [a brand name for phentermine]." The doctor then wrote out a prescription for thirty capsules of the drug requested. The agent was perhaps weighed, but nothing further was asked of him.
Four days later, Benjamin returned and the defendant asked him if he needed more Fastin. The agent said that he did, but was unsure on cross-examination whether he offered the doctor any explanation for his rapid return. After being weighed, the agent was given another prescription for thirty Fastin capsules.
On June 9, 1978, Benjamin revisited the defendant's office and was weighed. Moody cautioned the agent that he was getting these prescriptions "kind of close," but wrote him another prescription for a month's supply of the drug.
Benjamin again returned June 14, 1978 and was weighed. The doctor asked him whether he needed more pills. The agent responded affirmatively and was given another prescription for thirty more capsules.

COUNT 8
On June 14, 1978 agent Walter Assmusen accompanied Benjamin to the defendant's office. Benjamin told the defendant that he had a friend who needed a prescription. The doctor greeted Assmusen in the examination room by asking, "So you want some of those pills also?" The doctor asked Assmusen if he had tried any of Benjamin's pills. Assmusen answered that he had, and then the doctor replied that "they work good, don't they." Moody commented further that "the good thing about these is that they aren't amphetamines and you don't get hooked." Assmusen was weighed and then given a prescription for thirty capsules containing phentermine.
STATUTORY BACKGROUND
A physician's liability for unlawfully prescribing a controlled substance is apparently res nova in this state;[1] we will therefore examine the statutory basis of this offense at some length.
In 1970, Congress enacted the Controlled Substances Act, 84 Stat. 1242, 21 U.S.C. § 801, et seq., seeking to increase the effectiveness of federal enforcement in this area in light of growing drug abuse problems. See 21 U.S.C. § 801; United States v. Moore, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975). This act is significant since it provided a model for the Uniform Controlled Substances Act which Louisiana adopted in 1972. La.Acts 1972, No. 634 amending La.R.S. 40:961-995. See State v. Fearing, 30 Md.App. 134, 351 A.2d 896, 898 (1976); People v. Alford, 73 Mich.App. 604, 251 N.W.2d 314, 315-16 (Mich.App.1977). The vast majority of states have now also adopted this act. See table listing adopting jurisdictions in volume 22B L.S.A. at page 373.
The defendant was charged with distribution of phentermine. Distribution of phentermine is prohibited as a criminal offense. La.R.S. 40:967(A); 40:964, Schedule II(C)(6). Distribution includes delivery of phentermine by furnishing a prescription. La.R.S. 40:961(13). However, prescription of phentermine issued by a licensed physician for a legitimate medical purpose, for the purpose of correcting a physical, mental or bodily ailment, and acting in good faith in the usual course of his professional practice, is exempt from any criminal penalty. La.R.S. 40:961(30); 40:978(A).
Accordingly, to convict a licensed physician of distribution of phentermine by unlawfully furnishing a prescription, the state must prove that the doctor: (1) knowingly and intentionally furnished a prescription for the drug; and that (2) he did so other than for a legitimate medical purpose, for the purpose of correcting a physical, mental or bodily ailment, while acting in good faith *1215 in the usual course of his professional practice.
The defendant does not dispute that the first element was proved by the state beyond a reasonable doubt. He vigorously challenges the sufficiency of the evidence to establish the remaining element however.

REVIEW OF CLAIM OF INSUFFICIENCY OF EVIDENCE
The standard by which the merit of a convicted appellant's claim that the record contains insufficient evidence to prove his guilt must be judged is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Morgan, 389 So.2d 364 (La. 1980); State v. Harveston, 389 So.2d 63 (La.1980); State v. Hartman, 388 So.2d 688 (La.1980); State v. Byrd, 385 So.2d 248 (La.1980); State v. Landry, 381 So.2d 462 (La.1980); State v. Mathews, 375 So.2d 1165 (La.1979).
Our review of the record convinces us that, viewing the evidence in the light most favorable to the prosecution, a rational trier of the fact could have found beyond a reasonable doubt that Dr. Moody furnished the prescriptions other than for a legitimate medical purpose, for the purpose of correcting a physical, mental or bodily ailment, while acting in good faith in the course of his professional practice.
The prescriptions forming the basis of the counts before us were all issued in response to specific requests of patients. Even though the patient was sometimes weighed, no other physical examination or medical history was made. And no claim has been made that the prescriptions were issued for weight control purposes; in fact, the record reflects that none of the agents were overweight. The flat cash fee collected in each case appears to be the price of the prescription rather than a charge for professional services rendered.
The four counts arising out of the prescriptions issued to James Benjamin most clearly show that Dr. Moody was merely distributing phentermine on request. In a nineteen day period, Dr. Moody issued four separate prescriptions to Benjamin, each for thirty capsules, or the equivalent of a month's supply. While Moody warned Benjamin once about getting prescriptions "close together," he wrote another prescription anyway; in fact, the record does not show a single request for drugs which Moody refused to grant. On Benjamin's final visit, the defendant even prescribed phentermine for a friend who gave no student alibi and who had admitted sampling Benjamin's capsules.

ALLEGED NECESSITY OF EXPERT TESTIMONY
The defendant argues that his conduct cannot be found criminally culpable in the absence of expert testimony. Although expert testimony is both permissible and helpful to the trier of fact, we conclude that it is not essential under the facts of this case. We agree with the federal jurisprudence which holds that a jury can find under some circumstances that a doctor prescribed controlled substances not in the usual course of professional medical practice and without a legitimate medical purpose from evidence received from lay witnesses as to facts surrounding the prescriptions. See United States v. Rogers, 609 F.2d 834 (5th Cir. 1980); United States v. Smurthwaite, 590 F.2d 889 (10th Cir. 1979); United States v. Larson, 507 F.2d 385 (9th Cir. 1974). See United States v. Bartee, 479 F.2d 484 (10th Cir. 1973). The testimony of the various government agents, as discussed in detail above, provides a sufficient basis for the trial judge's finding of defendant's guilt.
ENTRAPMENT
Lastly, the defendant asserts, without supporting argument, the defense of entrapment. We conclude that the trial judge properly rejected this claim. For entrapment to exist, the defendant must be induced in some way to engage in criminal conduct when he is not otherwise disposed *1216 to do so. State v. Batiste, 363 So.2d 639 (La.1978); State v. Lindsey, 351 So.2d 1178 (La.1977). The entrapment defense will not lie if officers or agents merely furnish a defendant predisposed to commit the crime opportunities to do so. State v. Bates, 301 So.2d 619 (La.1974); State v. Kelly, 263 La. 545, 268 So.2d 650 (1972); Bennett, Work of the Appellate Courts for the 1974-1975 Term, 36 La.L.Rev. 502, 512 (1976). Accord, People v. Alford, supra, 251 N.W.2d at 319-20. It was reasonable for the trier of fact to find that the agents seeking prescriptions from the defendant merely afforded him opportunities to commit the offense charged, and that, the doctor's own predisposition caused the criminal conduct rather than any inducement by the officers. For example, the defendant greeted Officer Assmusen with the question, "So you want some of these pills, too?" Also, the use of agents in this manner in the investigation of medical doctors has been approved in many situations and is often the only means of obtaining necessary evidence of a doctor's illegal activities. United States v. Rosen, 582 F.2d 1032, at n.2, 1033 (5th Cir. 1978); United States v. Jobe, 487 F.2d 268 (10th Cir. 1973).
For the reasons above, defendant's convictions and sentences are affirmed.
AFFIRMED.
DIXON, C. J., dissents with reasons.
WATSON, J., dissents for reasons assigned by DIXON, C. J.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The record discloses nothing about phentermine, what its legitimate uses are, or whether it is or may be harmful if not taken in a certain way. Nor does the record show that a request for "something" to help "keep up the pace" or "keep going through exams" is not a legitimate request of a physician. The record makes defendant's conduct suspect, but not criminal beyond a reasonable doubt.
NOTES
[*] Dixon, C. J., and Watson, J., would both grant a rehearing. Blanche, J., did not participate in rehearing.
[1] In State v. Valasquez, 376 So.2d 129 (La. 1979), we affirmed the conviction of a licensed pharmacist who sold controlled drugs pursuant to a prescription he knew was forged.