COOKS, Judge.
Cedric Jackson was convicted of simply burglary of an inhabited dwelling, a violation of La.R.S. 14:62.2. Subsequently, he was charged and adjudicated as an habitual offender, second offense and sentenced to serve twelve years at hard labor without benefit of probation or suspension of sentence. In brief, he assigns six errors for our review.
FACTS
On October 25, 1991, Richard Brous-sard’s home was burglarized. Broussard and his girlfriend were watching television at home when they heard rumbling sounds in the kitchen area. Broussard went to the kitchen, and noticed a stranger. When he hollered “hey!,” the man fled. Broussard’s girlfriend called “911,” and described the intruder as a black male, approximately 5'10" tall and weighing approximately 180 pounds. Broussard described the man’s clothing as an uncollared turquoise T-shirt and blue jeans. Within minutes, police officers were alerted and dispatched to the immediate area of the burglary.
Noticing his wallet missing, Broussard provided a description of the wallet to the investigating officers and noted that it had “Olin,” his employer’s name stamped on the outside. Broussard listed the contents of the wallet as his driver’s license, an Olin identification card, a Visa card and Eighty Dollars in cash.
Officer Curt Cahoon was one of the officers dispatched to Broussard’s home. He testified the suspect was described by the dispatcher as a black male approximately 5'9" tall, between 175-185 pounds, wearing dark colored pants or blue jeans with a turquoise T-shirt. He elected to search the *43 area since the suspect reportedly left the house. The officer searched the north area and proceeded to College Street where he noticed the defendant, who closely fit the description of the suspect. Defendant was wearing dark colored jeans and a turquoise T-shirt. On approaching defendant, the officer noticed he was sweating profusely, which struck the officer as odd considering the cool weather. In response to questioning, defendant gave his name and explained he was sweating because he had been at work all night at Pat O’Carroll’s Restaurant. At the time he was stopped, defendant was five blocks from the Broussard’s house and three to four blocks from Pat O’Carroll’s Restaurant. The defendant was walking east, away from Broussard’s house. Gordon H. Abbott, the manager of Pat O’Carroll’s Restaurant testified defendant was employed by the restaurant in the kitchen; however, defendant was not scheduled to work on the night of the burglary, and he did not substitute for another worker.
Since the defendant matched the suspect’s description, Officer Cahoon requested that defendant accompany him to the Broussard’s residence for identification. The defendant voluntarily agreed, stating he wanted the matter cleared up. The officer advised the defendant of his Miranda rights and performed a routine pat-down search for weapons. The officer testified he did not feel any weapon, but he did feel something protruding from defendant’s back pocket. When asked, defendant told the officer he did not have any identification on his person. Upon arrival at the scene, Broussard was able to positively identify the defendant’s clothing and size. The officer, with defendant’s permission, removed a wallet and credit card from his back pocket. The wallet had “Olin” printed on the outside and the Visa card had Broussard’s name on it. At this point, the defendant was placed under arrest and read his Miranda rights again. While conducting a preliminary search of defendant’s outer garments, the officer found Eighty Dollars in currency, the Visa card, a package of cigarettes and a disposable lighter. Defendant explained he found the wallet and the credit card, but the money belonged to him. He was transported to the police station where a more detailed strip search was performed. Officer Thomas James Bell, the booking officer, and Officer Cahoon were present. Both officers noticed the careful manner in which defendant removed his pants, pulling the pants down and stepping out of them. This prompted Officer Cahoon to pick up the pants. When he did so several card-like items fell out. Looking through the cards, the other wallet contents Broussard reported missing were found except his driver’s license.
Before returning to patrol duty, Officer Cahoon checked the patrol car’s back seat for contraband. As a matter of procedure, he checked the seat before going on patrol earlier and it was clean. The second check turned up Broussard’s driver’s license tucked between the seat cushions. Officer Cahoon testified he noticed defendant was fidgeting, lying down and moving around the entire time he was in the back seat. The officer assumed defendant was trying to get comfortable by moving his handcuffed arms from the back to the front as often done by arrestees.
During the ensuing habitual offender hearing, the trial judge fully explained to the defendant his rights pursuant to La. R.S. 15:529.1 and that a guilty plea waived those rights. After this explanation, defendant admitted his prior convictions. The trial judge sentenced defendant to twelve years with the Department of Corrections without benefit of probation or suspension of sentence. The judge did not give reasons, orally or in writing, for imposing this sentence.
ASSIGNMENTS OF ERROR NUMBERS 1 AND 2
By these assignments defendant asserts the evidence was insufficient to support his conviction for simple burglary of Mr. Broussard’s home; and further alleges the verdict on this charge was contrary to the law and evidence.
When the issue of sufficiency of evidence is raised on appeal, an appellate *44 court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. The defendant was charged with simple burglary of an inhabited dwelling. La.R.S. 14:62.2 defines the crime as the “unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or theft therein, other than as set forth ...” The testimony of Mr. Broussard clearly established the burglar’s entry into the house was “unauthorized.” Mr. Broussard’s testimony also clearly established that a theft occurred when the burglar took possession of his wallet without permission. The only element at issue was the identity of the perpetrator.
Mr. Broussard testified the man he discovered in the kitchen was a black male, approximately 5'10" tall and weighing approximately 180 pounds. He described the man’s clothing as an uncollared turquoise T-shirt and blue jeans. The authorities were immediately contacted when the intruder fled. Approximately thirteen minutes after receiving the original dispatch, Officer Cahoon observed the defendant. He matched the description given by the dispatcher. Upon approaching defendant, the officer noted he was sweating profusely despite the cool weather. Although defendant explained he was sweating because he had worked all night at Pat O’Carroll’s Restaurant, the restaurant manager’s testimony was to the contrary.
The wallet and credit card felt during the patdown were removed from defendant’s pocket, with his consent. The wallet matched the description of the stolen wallet, and the credit card had Broussard’s name on it. Later, while conducting thorough searches of defendant’s clothing, the officers found Eighty Dollars in currency, and other credit card-like items belonging to Mr. Broussard. Checking the back seat of the patrol car, Officer Cahoon found Mr. Broussard's driver’s license between the seat cushion where defendant sat during transportation to the station.
Considering the evidence presented in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
ASSIGNMENTS OF ERROR NUMBERS 3, 4, 5 AND 6
These assignments question the propriety of the sentence imposed. Defendant alleges; (1) the sentence is cruel, unusual, and excessive; (2) the trial judge failed to adequately articulate reasons or a factual basis for the sentence; (3) the trial judge failed to properly apply the sentencing guidelines; and (4) he failed to adequately articulate the reasons for an upward departure from the sentencing guidelines.
Finding merit in defendant’s contention that the sentence is infirm because the trial judge failed to heed the “articulation mandate” of La.C.Cr.P. art. 894.1(A), we forego full discussion of the remaining assignments.
La.C.Cr.P. art. 894.1(A) requires that: “A. When the defendant has been convicted of a felony, the court shall consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission in determining the appropriate sentence to be imposed. However, no sentence shall be declared unlawful, inadequate, *45 or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines of the commission.”
This article clearly mandates that the trial court consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission in determining the appropriate sentence to impose when a defendant has been convicted of a felony. Furthermore, it requires the court to state for the record the considerations taken into account. The absence of such recital in the record, renders the sentence statutorily defective. Therefore, we must remand the case for resentencing in compliance with the recording requirement of La.C.Cr.P. art. 894.1(A).
ERRORS PATENT
The trial judge also failed to inform defendant of the prescriptive period for post-conviction relief pursuant to La. C.Cr.P. art. 930.8. Accordingly, the trial judge is instructed on remand to advise defendant of the provisions of Article 930.8. See State v. Cox, 604 So.2d 189 (La.App. 2nd Cir.1992); State v. Stephens, 604 So.2d 203 (La.App. 2nd Cir.1992).
For the foregoing reasons, the conviction is affirmed. The sentence is reversed; and the case is remanded for resentencing with instructions.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.