# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-612

**STATE OF LOUISIANA**

**VERSUS**

**STANFORD DEWAYNE STATON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 57658
HONORABLE CHARLES B. ADAMS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Don M. Burkett**
**District Attorney**
**Post Office Box 1557**
**Many, LA 71449**
**(318) 256-6246**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Michael W. Kelly**
**Post Office Box 447**
**Lake Providence, LA 71254**
**(318) 559-2105**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Stanford Dewayne Staton**

AMY, Judge.

The defendant was charged with distribution of a controlled dangerous substance, Schedule II, in violation of La.R.S. 40:967. Following a jury trial, the defendant was found guilty and sentenced to twenty-five years at hard labor. The defendant appeals, arguing that the evidence did not support his conviction, the court erroneously permitted the State to respond to a discovery motion at trial, and his sentence was excessive. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that on June 24, 2003, the Tri-Parish Drug Task Force (hereinafter "Task Force") was stationed in Room 102 at the Siesta Motel in Many, Louisiana. The Task Force was investigating drug dealing in the area with the help of its informant, Michael "Mike" Marshall. Marshall was in Room 123 of the motel, where he called alleged drug dealers to purchase drugs. According to Lieutenant Patrick Cobbs of the Task Force, a device was placed on the telephone in Marshall's room to record telephone conversations. Lt. Cobbs testified that Marshall wore a body microphone to allow the Task Force to hear his side of the telephone conversations. The Task Force members also set up a video camera in their room to videotape cars as they entered the parking lot.

Marshall testified that he called the defendant, Stanford Staton, to set up a drug deal. According to the transcript of the conversation which is contained in the record, Marshall told the defendant that he had "fifty" in cash.[1] He informed the defendant that he was in Room 123 at the Siesta Motel. When Marshall asked how long it would take him to arrive, the defendant responded: "Not long."

---

[1] According to Marshall's testimony, a fifty means "fifty dollars worth of crack cocaine which would be, it varied, at least three rocks . . . ."

Approximately ten to fifteen minutes later, the defendant arrived outside Room 123. Marshall opened the door and noticed that the defendant was still sitting in the front passenger's seat. When Marshall asked the defendant if he was coming in, the defendant made a gesture with his head indicating that the driver was. Marshall purchased the "fifty" from the driver and then, according to the transcript, asked him his name. The driver answered that his name was Marcello. The record indicates that the Task Force later retrieved the substance purchased. Testing revealed it to be crack cocaine.

The defendant was charged with conspiracy to distribute Schedule II controlled dangerous substance. The charge was later amended to distribution of a controlled dangerous substance, Schedule II, in violation of La.R.S. 40:967. The jury returned a guilty verdict, and the trial court sentenced the defendant to twenty-five years at hard labor. The defendant appeals, designating the following assignments as error:

1.) The jury wrongfully convicted Mr. Staton[.]

2.) The trial court committed error by failing to make the State comply with the discovery motion to obtain CI (Confidential Informant) Background[,] thereby violating Mr. Staton's constitutional rights.

3.) The court committed error by giving Mr. Staton an excessive sentence.

4.) Any error patent on its' [sic] face.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find one error patent. The defendant was not advised of his right to remain silent or his

2

right to have the State prove its case against him before he was adjudicated a habitual offender. In *State v. Pitre*, 04-1134, p. 4 (La.App. 3 Cir. 2/9/05), 893 So.2d 1009, 1012 (citations omitted), the court held that "the failure to so advise the Defendant is harmless because a hearing was held, at which the Defendant was adjudicated a third habitual offender. We further note that although the minutes indicate the Defendant testified, nothing in the minutes indicates the Defendant acknowledged his status as a habitual offender."

Here, a hearing was held in which the defendant was adjudicated a habitual offender. Further, the face of the record does not indicate that the defendant acknowledged his status as a habitual offender. Accordingly, we find that the trial court's failure to advise the defendant of his rights was harmless error under these circumstances.

*Insufficient Evidence*

The defendant argues that he was wrongfully convicted insofar as the law and evidence failed to meet the burden of proof necessary to prove the elements of the crime for which he was convicted.

In *State v. Freeman,* 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580, this court set forth the standard for insufficiency claims:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v.*

*Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

In the instant case, the State presented key evidence in the form of a tape recording of Marshall's telephone conversation with the defendant. The transcript of the conversation indicates that when the defendant came to the telephone, the conversation proceeded as follows:

| | |
|---|---|
| STATON: | Hello. |
| CRI [Marshall]: | Hey, man. |
| STATON: | Hey. |
| CRI: | Hey, what's up? It's Mike. |
| STATON: | Yeah. |
| CRI: | Hey, you feel like coming to see me? I got fifty. It's in cash. |
| | . . . . |
| CRI: | Ok, I didn't think you could hear me. Hey, but, uh, I got a room, I'm not at my house. |
| STATON: | You got a what? |
| CRI: | I said I got a room. I'm not at my house. I had to get out of my house a little bit, my Mom was tripping. So, I come and got a room. |
| STATON: | Oh, yeah? |
| CRI: | Yeah. Can you do that, or what? |
| STATON: | Well, s[---], yeah, yeah. |
| CRI: | Ok, I'm at the Siesta. |
| STATON: | Yeah. |
| CRI: | Room 123. You know how it's shaped like an "L"? |
| | . . . . |

STATON:          Yeah.

CRI:             Ok, I'm at the very end.  Like at the end of the "L".

STATON:          Ok.

         . . . .

CRI:             Ok, I'm in room 123.  How long do you think it'll take you?

STATON:          Not long.

CRI:             Ok, buddy.

STATON:          Yeah.

CRI:             Bye.

The defendant arrived at the motel approximately ten to fifteen minutes after this conversation occurred.  The defendant testified at trial and maintained that he did not plan on going to the motel.  He testified that his references to meeting Marshall at the motel were because he "was just trying to hurry up and get off of the phone with him."  The defendant testified that after his conversation with Marshall, he went to a barbeque at his friend's house.  One of the defendant's friends asked him if he had ten dollars to purchase some meat for the barbeque.  When the defendant answered affirmatively, his friend stated that Marcello Hicks was going to the store and that the defendant should ride with him, which the defendant did.

The defendant testified that he did not tell anybody that he had gotten a call from the motel.  He stated that he did not know why Hicks had to stop at the motel.  According to the defendant, once they arrived at the motel, he sat in the car and waited for Hicks to come out of the room.  The defendant testified that he never gave Hicks anything nor received any money from Hicks.

The State argued that the defendant was guilty of distribution of a controlled dangerous substance under the law of principals. Louisiana Revised Statutes 14:24, provides:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

After a review of the record, we find that there was sufficient evidence to support the conviction. In addition to the recorded telephone conversation, the jury heard testimony indicating that Hicks arrived outside Room 123 of the Siesta Motel within ten to fifteen minutes of Marshall's conversation with the defendant. When Marshall asked the defendant if he was coming in, the defendant motioned with his head indicating that Hicks was going to complete the drug transaction. The record indicates that Hicks sold Marshall "a fifty," which reflects Marshall's statement on the taped conversation that he had fifty dollars in cash. Marshall did not telephone Hicks, and although he had seen Hicks before, he did not discover Hicks' name until that day. When we examine the evidence in the light most favorable to the prosecution, we determine that a rational trier of fact could have found the defendant guilty of distribution of a controlled dangerous substance.

This assignment is without merit.

*Discovery Motion*

The defendant argues that the trial court committed error by failing to make the State comply with his discovery motion, entitled Motion to Obtain CI (Confidential Informant) Background. Specifically, the defendant argues that the trial court abused its discretion in allowing the State to respond to defense counsel's discovery request regarding the confidential informant's background on the date of the trial. The

6

defendant contends that he was not able to properly prepare a defense prior to trial, which violated his constitutional rights.

The record indicates that the defendant filed a Motion to Obtain CI Background of Michael Paul Marshall. The court minutes indicate that, during a hearing on the matter, the State "advised the Court of the contents of the criminal history of Michael Paul Marshall and advised that a copy will be provided to the defendant's attorney on trial date." The minutes do not indicate that the defendant raised an objection at this time.

At trial, Marshall was questioned by both the State and defense counsel regarding his criminal history. The record reveals that defense counsel did not make any objections before trial or during the direct examination of Marshall concerning its discovery request.

In *State v. Stracener*, 94-998, p. 5 (La.App. 3 Cir. 3/1/95), 651 So.2d 463, 466, *writ denied*, 97-0696 (La. 11/7/97), 703 So.2d 1261, the court stated that:

> Under La.Code Crim.P. art. 841, an irregularity or error cannot be appealed after a verdict unless it was objected to at the time of the occurrence. In *State v. Bennett*, 591 So.2d 1193 (La.App. 1st Cir.1991), *writ denied*, 594 So.2d 1315 (La.1992), the defendant, in one of his assignments of error, objected to the testimony of two of the state's witnesses saying that he had not been provided with any information about them during open file discovery and so had not had the opportunity to evaluate the testimony and prepare his defense. The defendant had not lodged a contemporaneous objection to the testimony during the trial and, based on La.Code Crim.P. art. 841, the court refused to review the assignment. *Bennett*, 591 So.2d at 1197.

In the instant case, we note that defense counsel had the opportunity to object to Marshall's testimony at trial and did not do so. Consequently, we decline to review the merits of this assignment.

7

*Excessive Sentence*

The defendant argues that his sentence is excessive in that the alleged crime did not involve any violent acts. He further argues that "[t]he court failed to properly consider the mitigating factor which would have led to a lesser sentence." The defendant failed to reveal this mitigating factor.

In *State v. Barling*, 00-1241, 00-1591, p.12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, this court articulated the standard for reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The defendant was sentenced to twenty-five years at hard labor. As a second felony offender[2], the defendant faced a sentence of fifteen to sixty years and a fine of up to $50,000. *See* La.R.S. 15:529.1 and La.R.S. 40:967(B)(4)(b). In its reasons for sentencing, the trial court explained that:

> I have reviewed the guidelines, the sentencing guidelines [of the] Code of Criminal Procedure Article 894.1 and it is my opinion that there is a risk if you were placed on probation that you would commit other

---

[2] In its reasons for sentencing, the trial court stated that, "[a]ccording to the Probation and Parole Office PSI, they classify you as a third felony offender. But as Mr. Strider stated, we are handling and processing you as a second felony offender."

crimes. I do believe you are in need of correctional treatment. And I believe any sentence less than the one that I'm going to impose would deprecate the seriousness of this offense. The aggravating factors that -- partial aggravating factors are that you were doing this for value. You were doing this for money. That you were selling crack cocaine to those who are addicted to crack cocaine to raise money for yourself. You were doing it strictly for all of the wrong reasons. Obviously there are no right reasons for doing it. But nonetheless, you are a multiple offender but that factor has been taken into consideration with the sentence range that has now been increased from the previous two years to thirty to now fifteen to sixty. The most important thing I find about this, Mr. Staton, I believe is that you were the leader of this little [sic] at least of the other individual that was there with you. You were directing him what to do, where to do it, and when to do it . . . .You've been trying to work the system. And only through the diligence of those trying to apprehend the drug dealers in this community were you apprehended. The mitigating factors that I have found are that I'm sure prison, incarceration will be a hardship on you. I believe in your letter you indicated your mother and your brother are both in need of your help to provide for them and to maintain the family. And those family difficulties and your financial difficulties, those are certainly problems that most everyone who is sentenced to jail will endure. I also find, Mr. Staton, in a general sense that you are a likable person, okay. That you have many positive attributes about you. That you are intelligent. You have a tremendous potential to do a lot of other things. But you've chosen to take this route. And why I call that a mitigating factor, it may even be an aggravating factor, because you know better. You know better th[a]n to be doing this. But you chose to do it. I don't believe you're in the situation where you are constrained or influenced by a substance abuse problem that you have yourself. I don't believe that's the case at all.

We find that the trial court did not abuse its discretion in sentencing the defendant to twenty-five years at hard labor as the mitigating factors set forth in La.Code Crim.P. art. 894.1 were taken into consideration, and the defendant's sentence was within the sentencing range.

This assignment lacks merit.

## DECREE

For the above reasons, the defendant's conviction and sentence are affirmed.

**AFFIRMED.**