# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 12-466

STATE OF LOUISIANA

VERSUS

DEWAYNE LAKEITH JOSEPH

**\*\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 09-236292
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\*\***

**JAMES T. GENOVESE
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy H. Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

**Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, Louisiana 70602
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:**
    Dewayne Lakeith Joseph

**J. Phil Haney**
**District Attorney—Sixteenth Judicial District**
**Angela B. Odinet**
**Assistant District Attorney**
**415 Main Street**
**St. Martinville, Louisiana  70582**
**(337) 394-2220**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Dewayne Lakeith Joseph, appeals his first degree murder conviction, alleging insufficiency of the evidence. For the following reasons, we affirm Defendant's conviction in all respects.

## FACTS

Defendant and the victim, Delores Roberson Joseph, were married but living separate and apart. In the course of exchanging a series of text messages, on February 26, 2009, they agreed to meet at Defendant's place of employment in Stephensville in lower St. Martin Parish.

When they met, Defendant was able to coax Mrs. Joseph into the shop where he worked, and they engaged in sexual intercourse. Subsequent thereto, Mrs. Joseph became aware that Defendant's former girlfriend had recently texted him, and she became upset. They got into an argument, the situation escalated, and violence ensued. Defendant knocked Mrs. Joseph out, then duct-taped and chained her to a dolly. After having secured her, he then dumped her into a nearby canal, and she drowned.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant argues the evidence adduced at trial was insufficient to sustain his first degree murder conviction.

## LAW AND DISCUSSION

The analysis for an insufficiency of the evidence claim is set forth as follows:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); State *v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

First degree murder is defined by La.R.S. 14:30. The State charged Defendant pursuant to the following provision:

A. First degree murder is the killing of a human being:

(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of . . . second degree kidnapping[.]

On appeal, Defendant concedes that he murdered his wife, but he argues that he thought she was dead before he threw her in the water; thus, he contends that the State failed to prove "first degree murder as there would be no kidnapping." Defendant further contends that since he believed the victim was already dead, that would negate any specific intent to kill or inflict great bodily harm. The flaw in Defendant's argument is that it assumes the truth of Defendant's self-serving testimony at trial. However, a *Jackson* analysis requires that this court, the reviewing court, view the evidence in the light most favorable to the prosecution, as stated in *Kennerson.*

The question of whether Defendant knew Mrs. Joseph was still alive before he dumped her in the water was the key issue. According to Defendant's

2

testimony at trial, he claimed that he thought she was already dead before he put her in the canal; however, the jury made an assessment of weight and credibility that was unfavorable to Defendant. Therefore, according to *Jackson*, we are not allowed to second guess the credibility determination of the trier of fact.

At trial, the State argued that Defendant knew the victim was still alive when he threw her in the water because he duct-taped her mouth, bound her hands behind her, and bound her feet. Further, during Defendant's video-recorded statement to police, Detective Karen Mouton asked him whether he knew the victim was still alive when he threw her in. He nodded affirmatively. Our review of the DVD of his statement does reveal a slight affirmative nod. Also, Detective Mouton and Detective James Thibodeaux testified that they took Defendant to the canal, and he indicated to them that the victim was alive when he dumped her in the water. Additionally, Dr. Joel Carney, a forensic pathologist, testified that the victim died from drowning and that he detected no trauma which would have caused her death.

Defendant noted at trial another part of his statement in which he told the detective that the victim "was dead, knocked out. She was like [sic]." And, on the DVD, Defendant makes a gesture with these sentences that appears to demonstrate bodily stiffness. His trial counsel seized on the first sentence as evidence that Defendant thought the victim was dead before he dumped her in the water. However, the jury viewed the DVD and evidently did not believe Defendant's version of what took place.

Defendant also argues that even if he did have specific intent to commit the offense, it was mitigated by "heat of blood" such that the conviction should be reduced to manslaughter. However, the record indicates that he drowned his wife after having time to duct-tape and chain her to a dolly, load her in a vehicle, select

3

a dump site (the first one being too shallow), and then put her in a canal. Our review of the record clearly indicates that the murder was committed in cold blood, however "heated" the initial altercation may have been, and not in the heat of the moment or in the heat of passion.

## DISPOSITION

For the reasons set forth above, it is clear that the jury's determination regarding specific intent was rational and that there was sufficient evidence to support its verdict of guilty of first degree murder. Therefore, pursuant to *Kennerson* and *Jackson*, Defendant's conviction is affirmed.

**AFFIRMED.**