STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-191

STATE OF LOUISIANA

VERSUS

DUDLEY MELANCON, JR.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 14-0266
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of James T. Genovese, Phyllis M. Keaty, and D. Kent Savoie, Judges.

AFFIRMED.

Paula C. Marx
Louisiana Appellate Project
Post Office Box 80006
Lafayette, Louisiana 70598-0006
(337) 991-9757
Counsel for Defendant/Appellant:
        Dudley Melancon, Jr.

**Earl B. Taylor**
**District Attorney**
**Jennifer M. Ardoin**
**Assistant District Attorney**
**Post Office Drawer 1968**
**Opelousas, Louisiana  70571**
**(337) 948-0551**
**Counsel for Appellee:**
        **State of Louisiana**

**KEATY, Judge.**

Defendant, Dudley Melancon, Jr., appeals his conviction of simple robbery. For the following reasons, we affirm Defendant's conviction.

## FACTS AND PROCEDURAL BACKGROUND

On December 30, 2013, a black male entered the 167 Truck Stop and Gator Gold Casino (casino) in St. Landry Parish and handed a note to the cashier, Chelsea Rogers, demanding money. After Rogers gave him approximately $1,800, he ran out of the casino. Rogers informed her boss, who ran into the parking lot but failed to see the robber. Around that same time, Mary Mayo, a casino patron, was driving into the parking lot with her sister, Lorenza Wilson, when they noticed a man lying in a ditch. As Mayo slowed her vehicle to see if the man needed help, a pickup truck drove up, the man in the ditch jumped into the back of the truck, and it sped away. Mayo followed the truck for a short distance, which allowed Wilson to secure the license plate number and call 911 with the pertinent information. The license plate number revealed that the truck was registered to Defendant's mother. When Mayo stopped following the truck, it had turned onto the road where Defendant's family lived. When police arrested Defendant approximately two weeks later, he was in possession of $1,840. At trial, Mayo identified Defendant as the truck's driver.

Defendant was charged with first degree robbery, La.R.S. 14:64.1. Following a jury trial on September 29, 2015, Defendant was found guilty of the responsive verdict of simple robbery, La.R.S. 14:65. On November 5, 2015, the trial court denied Defendant's motion for a post-verdict judgment of acquittal. On December 3, 2015, Defendant was sentenced to five years in prison at hard labor.

On appeal, and in his sole assignment of error, Defendant contends that the State failed to prove that he was guilty of simple robbery beyond a reasonable doubt.

## DISCUSSION

### I. ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

### II. ASSIGNMENT OF ERROR

In his only assignment of error, Defendant contends that the State failed to prove beyond a reasonable doubt that he was guilty of simple robbery. The analysis for such claims is as follows:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant claims that the State's evidence was insufficient to establish his identity as a principal to the crime. The evidence indicated that Defendant was the getaway driver; the robber was not identified. Principals are defined as: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24.

The occurrence of the robbery is not at issue; the contested issue herein is Defendant's identity as the getaway driver. The State must negate any reasonable probability of misidentification. *State v. Draughn*, 05-1825 (La. 1/17/07), 950 So.2d 583, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007).

Defendant was initially charged with first degree robbery, which is "the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La.R.S. 14:64.1(A). Defendant was convicted of the lesser-included offense of simple robbery, which is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon." La.R.S. 14:65(A).

If Defendant was the getaway driver for the robbery, he was a principal pursuant to La.R.S. 14:24. The evidence establishing Defendant as the getaway driver was Mayo's trial testimony that Defendant was the same man who drove the getaway truck. Mayo testified that on the day in question, she and her sister, Wilson, were driving up to the casino when they observed a man lying in the ditch. She stated that this took place in the "late evening," but that "it was light outside." Detective Tony Andrepont testified that Mayo reported to him that the driver was a "light skinned, black male with short dreads." On cross-examination, Defendant's counsel noted a discrepancy between Mayo's testimony and the police report, which indicated that she had told police she saw a "black male" walk across the parking lot, then dive into the back of the truck. She indicated that portion of the report was not correct. Mayo's passenger and sister, Wilson, acknowledged that she was "40 percent sure" that Defendant was the man she saw driving the getaway truck. Wilson further testified that she and her sister stopped following the truck when it turned onto Prayer House

3

Road, which is the street where, according to the evidence and testimony contained in the record, Defendant and his family lived.

Mayo testified that as they pulled up to see if the man in the ditch was hurt, a pickup truck suddenly appeared, the man in the ditch jumped into the back of it, and the truck sped away. She testified that as the truck sped away, the "owner" of the casino was yelling that a robbery had occurred. Wilson also testified at trial that she saw the "owner" in the parking lot when they returned from chasing the truck.

Mayo and Wilson were referring to Muhammad Iqbal, the casino's general manager, who testified at trial that on the date in question, Rogers, the cashier, informed him that she had been robbed. Iqbal stated that he witnessed the robber walk out of the east door. According to Iqbal's testimony, when he exited, he saw someone running through the back of the parking lot. Iqbal revealed that he drove around the parking lot but was unable to find the robber. He testified that he reviewed his security cameras, but the only relevant footage showed the robber walking back and forth outside before the robbery occurred. The record reveals that no videotapes were introduced into evidence. Iqbal testified that about ten minutes following the robbery, Mayo called him with the license plate number of the getaway vehicle. Iqbal indicated that Mayo advised that she had seen the robber and Defendant outside the building at the same time.

Defendant's father, Dudley Melancon, Sr., testified at trial that on the night of the offense, Defendant told him that if the police showed up at the house, Mr. Melancon should tell them that Defendant was not at home. Trooper Brady Johnson, a St. Landry Parish deputy at the time of the offense, testified similarly regarding what Defendant's father told him. However, Trooper Johnson stated that Mr. Melancon said Defendant told him to "tell [the police] the vehicle was stolen." Mr. Melancon testified that he told Defendant that he would not lie, and Defendant

4

left in a white car. Mr. Melancon stated that he did not know who was driving the white car. On cross-examination, Mr. Melancon indicated that Defendant wanted to pick up an extra set of keys for the truck, but there was only one set of keys.

Defendant's mother, Jody Taylor, testified that Defendant called her at 6:15 p.m. on the date in question and told her the truck was stolen. She revealed that he tried to say more, but she hung up. Ms. Taylor stated that Defendant called two or three hours later that evening to advise that the truck had been found. She testified that Defendant did not tell her where the truck was until the next day. Ms. Taylor stated that she went to recover the truck and reported said recovery to police. She revealed that the truck was in Lafayette at Defendant's grandmother's home.

Defendant denied driving the getaway truck and stated that he was in the Lafayette-Carencro area on December 30, 2013, driving his father's truck. Defendant testified that a female friend, who he knew only as "Robin," was staying at a hotel and called him to borrow money. He stated that he drove to the hotel to lend Robin $60, and when he came out, the truck was gone. Defendant testified that he had left it running. Defendant stated that he called his mother, but she hung up on him. He testified that he also called his father, who did not answer the phone. Defendant insisted that he subsequently got a ride home with his friend, Jerimiah Alexandria. He stated that once at home, he informed his father that the truck was stolen and obtained the spare key for the truck. Defendant advised that his friend then gave him a ride back to the area where the truck had been stolen. He revealed that once they returned to the Carencro area, they found the truck; it was locked and undamaged. Defendant indicated that he did not contact police about the stolen truck because he did not trust them. On cross-examination, he stated that he did not want to speak to the police because he was either on parole or probation, although his testimony was unclear on this point.

According to Defendant's testimony, he called his mother at about 4:45 p.m. to inform her that he had recovered the vehicle. He indicated that later, his mother called him to tell him that police were at the Melancon residence and the truck had been used in a robbery.

The case rested on the jury's credibility assessment. "It is well-settled that a jury is free to believe some, none, or all of any witness's testimony." *State v. Perkins*, 11-955, p. 10 (La.App. 3 Cir. 3/7/12), 85 So.3d 810, 817. Additionally, "positive identification by only one witness is sufficient to support a conviction." *State v. Neal*, 00-674, p. 11 (La. 6/29/01), 796 So.2d 649, 658, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002). Although there were discrepancies among the State's witnesses, such as whether Mayo told police she saw a man walking back and forth in the parking lot and whether she and Wilson spoke directly to Iqbal in the parking lot or called him later, these were matters for the jury.

The jury found Mayo credible and did not find Defendant credible. The license plate showed that the truck belonged to Defendant's mother, and an eyewitness saw the truck turn onto the road where the Melancons lived. Mayo identified Defendant as the driver of the getaway vehicle, and he does not dispute that the robbery occurred. The amount of money discovered on Defendant was almost the exact amount reported stolen. We conclude that the evidence was sufficient to prove Defendant's identity as the getaway driver.

However, Defendant argues that there was not a clear, consistent description that established the robber as the man in the ditch who jumped into the truck. He asserted the same argument in his motion for post-verdict judgment of acquittal and at the hearing thereon. Defendant suggests the man in the ditch could have been a drunken individual who obtained a ride in the truck registered to his mother.

6

The cashier, Rogers, described the robber as a dark man "maybe in his 40's" in a gray sweatshirt with a hood. The customer, Mayo, described the man in the ditch as "short and dark-skinned" and wearing "something black." Trooper Johnson testified that Rogers reported that the robber was "between 35 and 40," short, with a thin moustache. Defendant argues this aggregation of descriptions constitutes circumstantial evidence and is thus subject to the dictates of La.R.S. 15:438, which states that: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."

In this matter, there were similarities between the descriptions of the robber and the man who jumped in the truck, i.e., a short, dark-skinned man in his late thirties or forties. In addition, the circumstances indicated not only that a robbery occurred, as Defendant concedes, but also that the man in the ditch was the robber. As Wilson noted, "[a]fter you abruptly see somebody abruptly jump in the back of a vehicle after laying [sic] in the ditch, you say, 'Oh, they might be robbing the place. Let's follow them.'" Combined with the evidence discussed above, a rational jury could have concluded not only that Defendant was the driver of the truck that sped away from the casino, but also that the man who dove into the back of the truck was the robber. As the getaway driver, Defendant was a principal. Therefore, we affirm Defendant's conviction.

## CONCLUSION

The conviction of Defendant, Dudley Melancon, Jr., of simple robbery is affirmed.

**AFFIRMED.**