NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-321

STATE OF LOUISIANA

VERSUS

GEORGE ROY ROBERTS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 299,082
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, J. David Painter, and James T. Genovese,
Judges.

AFFIRMED.

James C. Downs
District Attorney – Ninth Judicial District
Numa V. Metoyer, III, Assistant District Attorney
Post Office Drawer 1472
Alexandria, LA 71309
(318) 473-6650
Counsel for Appellee:
State of Louisiana

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
**George Roy Roberts**

**SAUNDERS, Judge.**

On October 9, 2009, the State filed a bill of information charging Defendant, George Roy Roberts, with aggravated second degree battery, in violation of La.R.S. 14:34.7. The parties selected a jury on August 11, 2010; on the same date, said jury heard evidence and found Defendant guilty as charged.

On August 20, 2010, the trial court denied Defendant's Motion for Post-Verdict Judgment of Acquittal or Alternately Motion for New Trial in open court. At the same hearing, the court sentenced Defendant to five years at hard labor.

Defendant now appeals, asserting insufficiency of the evidence and excessive sentence. We affirm the conviction and sentence.

## FACTS:

On June 14, 2009, Alexandria police officers were dispatched to a residence shared at the time by Defendant and the victim, Tasha Peace. At the scene, Ms. Peace told the officers that she had argued with Defendant while she was lying on the couch. She got up and went to the bathroom. As she returned to the couch, she noticed a strange smell. Defendant then walked up holding a skillet and threw hot grease on her. She used a blanket as a shield but still received some burns.

The victim also told officers that she struggled with Defendant for control of the skillet, and she fell to the floor. Defendant then put his knee on her chest and grabbed her by the mouth. Officers observed burn marks on the victim's hands, left arm, and left breast area; one officer also observed scratch marks on her mouth. Defendant claimed the victim had thrown grease on him; officers observed he had a burn mark in the web of one hand. The victim was treated at an area hospital. A diagram that was part of a medical report introduced at trial showed that the victim had burns on both hands, both forearms, and her left chest/breast area; she suffered both first and second degree burns.

Michelle Williams, one of the officers who responded to the scene, testified there was grease in the living room on the couch, on the floor in front of the couch, and on a wall. She did not remember seeing a blanket, and she did not look in the kitchen. Another officer, Darrell Clark, went into the kitchen and saw grease on the floor that appeared to have been stepped in; he also saw grease in the living room and saw a grease-soaked blanket. Officer Williams arrested Defendant at the scene.

## ASSIGNMENT OF ERROR NUMBER ONE:

In his first assignment of error, Defendant argues the evidence adduced at trial was insufficient to support his conviction for aggravated second degree battery. The analysis for such claims is settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant does not argue that any particular element of the crime was unproven. Rather, he argues the jury's apparent disbelief of the victim's trial testimony, which exculpated Defendant, was not reasonable. As noted in the "Facts" above, the victim told two police officers that Defendant had thrown hot grease on her. However, she later attempted to drop the charges. When called to

2

testify at trial, she claimed her burns were accidental.   For example, the following colloquy occurred:

Q      Okay.  Do you remember where you were living on that date?

A      At 716 Compton Street.

Q      Is that where you live now?

A      No, I live at 720 Compton.

Q      All right, so you moved right down the street?

A      Uh -huh (Affirmative).

Q      Okay.

. . . .

EXAMINATION CONTINUED BY MR. METOYER:

Q      So you moved right down the street, is that correct?

A      Yes, sir.

Q      Okay. All right, could you tell us what happened on the 14th day of June, 2009?

A      Well, I was in the kitchen getting ready to cook and I had some grease – I had put some grease on the stove to fry some chicken, and me and the defendant we were -- had started arguing and I come out the kitchen -- I grabbed the grease off the stove cause I decided not to cook after we had been arguing. So, I come out the kitchen with the skillet of grease up in my hand and by the time I got to the bedroom George jumped off the couch and ran up in there and we start tussling over the skillet cause I -- by that time I'd already burnt my hands. And we start tussling over the skillet and that's how I get [sic] the burn on my breast part.

Q      Okay. All right. Let's back up for a second, because I'm not understanding.   Why would you bring the skillet from the kitchen into the bedroom?

A      Well, at that particular time we was just arguing, just the movement that I was making.

Q      All right, so, your testimony is that you heated up a skillet of grease ...

A      Yes.

3

Q    ... then you started to walk through the house with the skillet ...

A    No, I didn't start to walk through the house. By the time I grabbed it off the stove I was like right at the bedroom cause the bedroom is right here at the kitchen.

Q    Okay.

A    I was like right here at the bedroom, and me and him was still arguing going back and forth.

Q    Okay, y'all were still arguing?

A    Yes.

Q    Okay. And then what happened?

A    Then he hopped up off the couch and ran up in the bedroom where I was and me and him start tussling with the, uh, the skillet of grease.

Q    Okay, and where are you now?

A    We're still up in the bedroom.

Q    You're in the bedroom?

A    Uh - huh (Affirmative).

Q    Okay. Then what happened?

A    Then after we start[ed] tussling and we got through tussling, I ran outside. I ran next door to the neighbors and told her to dial 91, dial 911 for an ambulance because by that time, you know, I was really burning and it was hot outside.

Q    Okay. All right. Do you recall making a statement to, let's see, Officer Michelle Williams?

A    No, sir, I don't.

Q    You don't recall that at all?

A    No, sir, I don't.

THE COURT:

                Date, time, and place, sir.

EXAMINATION CONTINUED BY MR. METOYER:

4

Q     You recall making a statement to Officer Williams the night of the incident,

June ...

A     No, sir, I don't.

Q     ... 14th , 2009?

A     No, I don't.

Q     It was at 716 Compton Street where you, where you lived?

A     Yes. Yes.

Q     And do you recall making that statement?

A     No, I don't recall making a statement, sir.  Then I recall making a statement to her at the hospital.

Q     Okay, you recall making a statement to her at the hospital?

A     Yes.

Q     All right, and what did you tell her on that day?

A     I told her that George Roberts had burnt me with the grease.

Q     And you told her a little more than that.  How did you tell her how it started?

A     I don't remember.

Q     Okay. You don't recall?

A     No, sir, I don't.

Subsequently, the victim refreshed her memory by reading her statement to police and a portion of the medical records.  Then the following exchange occurred:

Q     And you did receive first and second degree burns, correct?

A     Yes, I did.

Q     They were serious burns?

A     Yeah, they was [sic].  Well, my hands they was [sic].

5

Q       All right. And the reason for your visit in terms of what was related to the hospital staff is what on here? What does that say?

A       I can't read that. I can't read the hand writing?

Q       You can't read this?

A       No, I can't.

Q       Well, would you dispute that it says hot grease thrown on chest and arms by boyfriend?

A       No, I could see the boyfriend part, but I couldn't read this part right here.

Q       Okay, you can't read it but it says that you told the hospital staff that he threw hot grease on you?

A       Well, I don't remember telling them that. I remember telling it to the police. I remember that.

Q       Okay. Here on the second page of your medical records is also a chief complaint. Can you read it here?

A       Boyfriend throws hot grease on her.

Q       Right. So not only did you tell Officer Williams and Officer Clark that your boyfriend threw hot grease on you, you also told the people at the hospital that the reason for your injury was because your boyfriend threw hot grease on you?

A       Okay. I probably did tell them that.

Q       All right, did you probably tell Officer Williams ...

A       I just don't remember. It's been so long ago. I don't remember who I talked to or whatever. I remember talking to the lady officer and telling her that, but I don't remember telling it to anybody else.

Q       Okay. Do you remember a statement you gave to Detective Distefano on October 12, 2009?

A       Who's that?

Q       The detective that contacted you?

A       The one that come to my house?

Q       Yes.

6

A       Yeah, I remember telling him that he didn't do it. I remember telling him that and giving him a, uh, statement on a little recording.

Q       Okay.

A       I remember telling him that.

Q       But you didn't tell Detective Distefano that you were cooking chicken, did you?

A       I just remember telling him I was going to cook, uh, cook chicken. I don't know, I told him I was going to cook.

Later, the prosecutor tried to clarify the victim's testimony:

EXAMINATION CONTINUED BY MR. METOYER:

Q       Okay.  And you don't recall, you don't recall telling the officer that he placed his knee on your chest?

A       No, sir, I don't.

Q       You don't recall telling the officer that he grabbed you by your mouth and, and injured your mouth ...

A       No, sir, I don't.

Q       ... after he burned you?

A       No, sir, I don't.

Q       Okay. So you're not saying – you're not disputing whether you made these, you're saying that you don't recall ...

A       I'm not disputing that I said, you know, that I made the statement, but I don't recall making that statement. I really don't recall. I don't recall saying none of that.

Q       Okay. Well, Ms. Peace, how is it that you can remember, you can remember from that day before you talked to the officer, you can remember frying chicken or preparing to fry chicken, and then picking up a skillet by the bedroom and spilling the grease on yourself but you can't remember what you said?

A       I don't. I can't remember what I said. I cannot remember what I told them.

Q       All right. So, you could have told them this?

A       I can remember only to that point to when I got to the hospital and I, uh, talked with the police officer.

Q    Were you there when the officers were questioning the defendant?

A    No, sir, I wasn't.

Q    Okay. So, you don't know whether – what his story was to them?

A    No, sir, I don't.

The victim also claimed there should not have been any grease in the living room as the police officers testified. She stated that the grease was in the bedroom where, according to her testimony, it accidentally spilled on her during the struggle with Defendant.

Thus, the jury had before it the victim's testimony that she received her burns accidentally, but it also had testimony from two police officers that the victim told them that Defendant burned her deliberately.[1]

Officers also testified that Defendant described a scenario similar to the one related by the victim, except that he claimed to have been the person on the couch, and that the victim threw the hot grease on him. Officer Williams observed that she was faced with two conflicting stories; however, as the victim had the more numerous and severe injuries, she concluded Defendant was the perpetrator. Given the victim's injuries and the fact that the location of the grease was consistent with the version of events she first told police, we find it was reasonable for the jury to reach the same conclusion.

As noted previously, Defendant's present argument is simply an attack upon the jury's credibility determination. However, as noted in *Kennerson*, appellate courts do not re-assess credibility. Further, the victim's trial testimony was simply

---

[1]Jurors also heard testimony by Detective Robert Distefano on October 12, 2009, the victim told him the burns were accidental. She told him she lied to the other officers because she was angry at Defendant.

8

inconsistent with the physical evidence. Accordingly, for the reasons discussed, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO:

In his second assignment of error, Defendant argues that his five-year sentence is excessive. He also argues the trial court failed to give due consideration to mitigating factors in formulating his sentence, as required by La.Code Crim.P. art. 894.1. Defendant did not file a motion to reconsider sentence in the present case. This court has stated:

> The defendant contends that the trial court failed to comply with La.Code Crim.P. art. 894.1 when it imposed a twenty-year sentence where there were other culpable co-defendants, the offense was committed under the influence of drug intoxication, and the trial court did not specifically note the basis for its sentencing choice. The defendant further argues that the sentence imposed was excessive.

> Louisiana Code of Criminal Procedure Article 881.1(E) requires a defendant to set forth the specific grounds on which a motion to reconsider may be based. Failure to include a specific ground upon which a motion to reconsider sentence may be based "shall preclude . . . the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." *Id*. In the present case, although the defendant generally raised the issue of excessiveness in his motion to reconsider sentence, he failed to specifically allege that the trial court failed to consider the factors of La.Code Crim.P. art. 894.1. Accordingly, because that claim was not specifically set forth in his motion to reconsider, it cannot be reviewed in this appeal, *State v. Landry*, 09-260 (La.App. 3 Cir. 11/4/09), 21 So.3d 1148, *writ denied*, 09-2577 (La.5/21/10), 36 So.3d 229, and our review of the defendant's sentence is restricted to his bare claim of excessiveness. *State v. Mims*, 619 So.2d 1059 (La.1993).

*State v. Prejean*, 10-480, p. 2 (La.App. 3 Cir. 11/3/10), 50 So.3d 249, 251.

Therefore, we will not separately address Defendant's argument regarding La.Code Crim.P. art. 894.1. Further, as noted in *Prejean*, he is limited to a bare claim of excessiveness of sentence. The analysis for the latter claim is settled:

> The sentencing court has broad discretion in imposing penalties for criminal convictions:

9

A sentence which falls within the statutory limits may be excessive under certain circumstances. To constitute an excessive sentence, this Court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and therefore, is nothing more than the needless imposition of pain and suffering. The trial judge has broad discretion, and a reviewing court may not set sentences aside absent a manifest abuse of discretion.

*State v. Guzman*, 99-1753, 99-1528, p. 15 (La.5/16/00), 769 So.2d 1158, 1167 (citations omitted). "The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331.

. . . .

In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted).

*Id*. at 251-52.

At the sentencing hearing, the trial court stated:

All right. Well, I have looked at the sentencing guidelines under Article 894.1, and I believe that, uh, (A)3 applies that a lessor [sic] sentence would deprecate the seriousness of your crime. I've looked at the aggravating factors under Article 894.1, and I find that Number One is appropriate. The defendant -- the offender[']s conduct during the commission of the offense manifested deliberate cruelty to the

victim. Number Six is the offender used threats of or actual violence in the commission of the offense. I think Number Ten is an aggravating factor. The offender used a dangerous weapon in the commission of an offense, which was hot grease.

I do not find that there's any mitigating factors that would apply. Uh, this was a Division D matter, okay. So, that we had come over here. Uh, however, there is some confusion about the prior criminal history. You do not have any criminal history in Rapides Parish so that's something in your favor. That you're 52 years old, and I'm not aware of any criminal history. The only problem that you seemed to had [sic] was with Ms. Tasha Peace.

Uh, based upon the facts of the case, uh, the aggravating factors of the case, that Ms. Peace was burned, uh, with this hot grease. I'm going to order that you serve five years of hard labor with the Department of Corrections.

Pursuant to the factors stated in *Smith* and *Prejean*, the nature of the offense was egregious, as the grease burns were undoubtedly painful and had the potential to be disfiguring. The circumstances of the offender were that he was fifty-two and had no apparent criminal history. Regarding the sentence in comparison to other sentences for similar offenses, we observe that the five-year sentence is one third of the fifteen years Defendant could have received under the controlling statute, La.R.S. 14:34.7. Also, we note that in *State v. P.M.*, 00-1613 (La.App. 3 Cir. 5/2/01), 786 So.2d 857, this court affirmed two concurrent terms of twelve and one-half years, plus fines, for aggravated second degree battery. This court noted the trial court had observed "the use of hot grease to injure another person was 'barbaric[.]'" *Id*. at 862. The defendant in that case, unlike Defendant here, had prior offenses, but *P.M.* shows the current sentence does not fall outside the norms of Louisiana jurisprudence. Accordingly, for the reasons discussed, this assignment lacks merit.

**DECREE:**

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

11

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules– Courts of Appeal, Rule 2–16.3.